IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. CR-23-085-RAW |
| | ) |
| STEVEN KENNETH REILLY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the court is the motion of the defendant to reconsider order denying motion to dismiss indictment. Defendant is charged with two counts of making a false statement to a firearms dealer during the acquisition of a firearm, in violation of 18 U.S.C. §922(a)(6). In pertinent part, that statute prohibits knowingly making any false or fictitious oral or written statement "with respect to any fact material to the lawfulness of the sale or other disposition" of a firearm involving a licensed dealer.

Additionally, 18 U.S.C. §922(n), which does not appear in the indictment, provides that "any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year" may not receive any firearm which has been shipped or transported in interstate or foreign commerce.

In the present motion, defendant also challenges 18 U.S.C. §922(d)(1), which makes it illegal for any person to "sell or otherwise dispose of any firearm or ammunition to any

person knowing or having reasonable cause to believe that such person . . . is . . . under indictment for . . . a crime punishable by imprisonment for a term exceeding one year."

There seems no dispute that on December 12, 2022, a felony information was filed against the defendant in Marshall County, Oklahoma. On December 24, 2022 and January 3, 2023, (i.e., the two counts of the indictment) defendant sought to reclaim his own firearms from two pawn shops. Defendant allegedly falsely stated on the required ATF Firearms Transaction Form that he was not under indictment or information in any court for a felony.

Defendant moved (#22) to dismiss the indictment for failure to state an offense. *See* Rule 12(b)(3)(B)(v) F.R.Cr.P.[1] This court denied the motion (#25). The motion implicates, at least in part, the Supreme Court decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S.Ct. 2111 (2022). In that case, "the Court invalidated a New York law that forbade Americans to carry a firearm in public unless they could persuade a government official that they had been subjected to some extraordinary threat to their personal safety." Randy Barnett & Nelson Lund, *Implementing Bruen,* LAW & LIBERTY (Feb. 6, 2023), https://lawliberty.org/implementing-bruen.

The Supreme Court noted that "the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen,* 142 S.Ct. at 2125. The Court declined to adopt that two-part approach and held instead as follows: "When the Second Amendment's plain text covers an

---

[1] This appears to be the appropriate method, whether the constitutional challenge is facial or as applied. *See United States v. Herrera,* 51 F.4th 1226, 1282-84 (10th Cir.2022).

individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2129-30.

Scholars have correctly foreseen that the Court's "new guidance . . . unfortunately will be extremely difficult for lower courts to apply in a principled manner." Barnett & Lund, *supra*. "In *Bruen,* the Court was responding to a very real problem in the lower courts. But *Bruen*'s new legal test is ill-suited to the task. Except for disarmament laws aimed at politically suspect minorities such as Indians, blacks, Catholics, and suspected British loyalists who refused to sign loyalty oaths, there were almost no legal restrictions during the founding era on keeping or bearing weapons, as distinct from misusing them. And such regulations were uncommon before the mid-nineteenth century. To evaluate modern gun control laws, lower court judges have now been given the unenviable task of looking for analogous regulations in a historical record that consists largely of empty pages." *Id.*

Therefore, strictly applying *Bruen* would seem to pose a threat to many modern gun laws. *See United States v. Rahimi,* 61 F.4th 443 (5th Cir.), *cert. granted,* 2023 WL 4278450 (June 30, 2023)(holding §922(g)(8) unconstitutional); *United States v. Daniels,* 2023 WL 5091317 (5th Cir.2023)(holding §922(g)(3) unconstitutional). The Supreme Court having granted certiorari in *Rahimi,* additional guidance may be forthcoming. In the meantime, there

may be some permissible flexibility.[2] Also, the case at bar involves §922(a)(6), which may (or may not) prove to be the least vulnerable of the panoply. Defendant asserts that "the Court denied Mr. Reilly's motion, using the rationale proposed by the government." (#30 at 2). Actually, the court principally relied on the Seventh Circuit decision in *United States v. Holden,* 70 F.4th 1015 (7th Cir.2023), which defendant's motion does not address. Neither the court in *Holden* nor this court strictly followed the framework set forth in *Bruen*, as the reasoning seemed clear enough. In light of the present motion, this court will now do so.

First, whether the Second Amendment's plain text covers the individual's conduct. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." Several district courts have concluded that conduct charged under §922(a)(6) does not fall within this plain text. The statute "only prohibits making false statements, and this prohibition does not

---

[2] It has been suggested that *Bruen*'s "implementing rule, or rule of construction, to guide courts in assessing the constitutionality of other gun regulations . . . may be dictum, because it was not part of the reasoning that was necessary to justify the outcome on the facts that were before the Court." Randy E. Barnett & Lawrence B. Solum, *Originalism after Dobbs, Bruen, and Kennedy: The Role of History and Tradition,* (manuscript at 21 & n.111)(https://papers.ssrn.com/sol3/papers.cfm?abtract_id=4338811.) This court declines to make such a declaration. Justice Alito wrote separately that "[o]ur holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun." *Bruen,* 142 S.Ct. at 2157 (Alito, J., concurring). Additionally, the Court stated: "To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." *Id.* at 2138 n.9. The scholars previously cited note: "Indeed, *Bruen* itself approved of laws in 43 states that grant concealed-carry licenses to any adult who can meet objective criteria such as passing a background check and taking a handgun safety class. Yet the justices provided no evidence of a historical tradition or historical analogues of such regulations, the first of which was apparently adopted in 1961. Not only was this long after the Second Amendment was ratified, but it was also long after New York and other states adopted regulations like the one struck down in *Bruen* . . . .[T]he Court did little more than declare its approval without any historical analysis." Barnett & Lund, *supra*. The authors also note the Court reaffirmed approval of "bans on guns in 'sensitive places'. But there was no tradition of such bans in America during the Founding Era." *Id.*

implicate conduct protected by the Second Amendment." *United States v. Valentine,* 2023 WL 2571720, *7 (N.D.Ind.2023). "Having found that §922(a)(6) does not implicate conduct protected by the Second Amendment, the Court will deny the motion and has no occasion to advance to the second prong of the *Bruen* analysis." *Id.* at *9. A district court within the Tenth Circuit concurs. *See United States v. Gonzalez,* 2022 WL 17583769, *2 (D.Utah 2022). This court is inclined to agree with this result.

Defendant disputes this conclusion, asserting that the statute involves false statements "material to the lawfulness of the sale," which necessarily implicates 18 U.S.C. §922(n). Because answering the question whether one is under felony indictment is necessary to "receive" a firearm (and receipt is a prerequisite to "keeping and bearing" a firearm), the argument goes, the defendant's conduct does implicate the Second Amendment. In the interest of thoroughness and possible appellate review, the court adopts this position *arguendo* and finds the "plain text" test satisfied.[3]

As stated, district courts appear to have uniformly stopped at the first prong of the *Bruen* test regarding a challenge to §922(a)(6) and have not sought a historical analogue. If a court proceeds to the next step, the burden is on the government. After citing general restrictions, the government concludes: "Section 922(a)(6) is clearly a statute affecting, and

---

[3]The court declines to adopt the government's argument that defendant is excluded from the plain text of the Second Amendment because he does not qualify as a "law-abiding citizen." (#23 at 12). The Court in *Bruen* stated that prior cases "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." 142 S.Ct. at 2122. This does not make "law-abiding" a change to the plain text of the Second Amendment.

relating to, the commercial sale of firearms, and is thus 'relevantly similar' or 'analogous enough' to laws that were in existence during the pertinent time periods." (#23 at 13.). The court finds the government's effort in this regard unpersuasive.

Nevertheless, the court denies the present motion. Defendant argues: "Section 922(a)(6) does not prevent a person from providing false answers to questions that are immaterial to the lawfulness of a firearm transfer." (#30 at 4). As the government, the Seventh Circuit's *Holden* decision, and other district courts have pointed out, there is a free-standing legal principle which *Bruen* (in this court's view) does not overrule.[4] An individual who has allegedly "furnishe[d] false information to the Government in feigned compliance with a statutory requirement cannot defend against prosecution for his fraud by challenging the validity of the requirement itself." *United States v. Knox,* 396 U.S. 77, 79 (1969). A defendant who lies "as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute he sought to evade is unconstitutional." *Dennis v. United States,* 384 U.S. 855, 867 (1966).

As the *Holden* court (after citing these cases) puts it: "The word 'material' in §922(a)(6) does not create a privilege to lie, when the answer is material to a statute, whether or not that statute has an independent constitutional problem." 70 F.4th at 1017. "[A] truthful answer to the question 'are you under indictment?' can be material to the propriety of a firearms sale, whether or not all possible applications of §922(n) comport with the Second

---

[4]Applying this principle, the court also declines to address the constitutionality of §922(n) or §922(d)(1).

Amendment." *Id.* at 1018.[5] *See also Abramski v. United States,* 573 U.S. 169, 190 (2014)(a false statement also "imped[es] *the dealer's* ability to carry out its legal responsibilities.")(emphasis added).

In the alternative, the court finds the statue may be upheld under the *Bruen* court's approval of the 43 state "shall issue" licensing regimes discussed in footnote 2 of this order. *See United States v. Jones,* 2023 WL 4105415, *4 (N.D. Ind.2023)("The disclosure requirements imposed by §§922(a)(6) and 924(a)(1)(A) are analogous to 'shall-issue' licensing regimes"). That is, answering questions on a form is sufficiently similar to "undergo[ing] a background check or pass[ing] a firearms safety course," 142 S.Ct. at 2138 n.9, the constitutionality of which the Supreme Court did not call into question.

It is the order of the court that the motion of defendant to reconsider (#30) is hereby denied.

**ORDERED THIS 21st DAY OF AUGUST, 2023.**

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**

---

[5]Defendant posits a distinction: "Mr. Reilly is not asserting that the Court should excuse the alleged lie because the statute is unconstitutional. He asserts that he never violated the statute at all. The alleged lie that gives rise to the charge was immaterial to the lawfulness of the transaction." (#30 at 4). Of course, under defendant's argument, reaching the conclusion of immateriality depends upon a finding that §922(n) and/or §922(d)(1) is unconstitutional. In the motion's final sentence, (#30 at 10), defendant asserts in conclusory fashion that §922(a)(6) is also unconstitutional under the Fifth Amendment. Such a bare assertion need not be entertained on the merits.